THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEON MICHAEL DUNAGAN, Defendant-Appellant.

First District (4th Division)   No. 76-624

Opinion filed April 19, 1979.

974

J. Samuel Tenenbaum and Theodore M. Becker, both of Becker & Tenenbaum, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Kenneth T. McCurry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Defendant, Leon Dunagan, was charged with the murder of Oscar Tuson Boyd. After a jury trial in the circuit court of Cook County, he was found guilty of that crime and sentenced to a term of not less than 50 and not more than 100 years. The defendant asserts on appeal that (1) the trial court erred in refusing to quash the arrest of the defendant and suppress statements and evidence which were obtained as a result of defendant's alleged illegal arrest; (2) the trial court erred in failing to suppress the statement made by the defendant because his mother was not present; (3) the trial court erred in refusing to grant a new trial and in refusing to order the prosecution to correct erroneous testimony presented by two of the

State's witnesses; (4) the photographic identification testified to by Brunson should have been suppressed; (5) the trial court erred in refusing to grant a new trial when after trial a police report was discovered that allegedly cast doubt on the photographic identification made by the State's witness; (6) the trial court erred in refusing to give instructions as to voluntary manslaughter, accomplice testimony, and in failing to provide a limiting instruction on Shaw's testimony; (7) the prosecutor's comments in closing argument regarding defendant's failure to testify constitute reversible error; (8) the court committed reversible error in calling John Shaw as a court's witness; (9) the trial court erred in excluding testimony concerning the identification and destruction of the murder weapon; and (10) the trial court improperly limited cross-examination of Shaw and certain other witnesses.

On December 26, 1971, Richard Brunson had been attending a reunion of his high school graduation class in the Jet Club at 62nd and Prairie Avenue, Chicago, Illinois. At approximately 10 p.m., Brunson left the reunion and walked to where he had parked his 1966 red Volkswagen. Brunson found that his car was not where he had parked it, and he returned to the Jet Club and spoke to Oscar Boyd. Then Brunson and Boyd, along with Mary Williams, Norma Statum and Barbara Abston, entered Boyd's 1970 two-door Cadillac. Oscar Boyd drove and the five headed west on 63rd Street.

At 63rd Street and Wabash Avenue, Richard Brunson saw his red Volkwagen heading south on Wabash toward 63rd Street. Oscar Boyd stopped his car and backed into the intersection of 63rd and Wabash, blocking the path of the Volkwagen. Brunson observed the presence of four teen-aged boys in the Volkwagen. As Boyd's Cadillac came to a halt, Brunson and Boyd alighted, as did the four occupants of the Volkswagen. Richard Brunson testified at the trial that he had seen the face of the driver of the Volkwagen that night and he identified him in court as the defendant, Leon Dunagan.

Brunson and Boyd ran from the Cadillac toward the fleeing youth. Brunson testified that the defendant, driver of the Volkswagen, had a gun in his hand and when Oscar Boyd, the deceased, shouted "Hey," the defendant shot Boyd. As Boyd went down, the defendant continued running and entered the housing project at 6215 South Wabash. The police came and they removed Oscar Boyd to Billings Hospital where he later died.

Police officer Melvin Duncan, after being assigned to the homicide of Oscar Boyd, saw Richard Brunson, Mary Williams, Norma Statum and Barbara Abston at Billings Hospital. After speaking with them, Duncan went to 63rd and Wabash to observe the scene of the offense. Other officers examined Brunson's Volkswagen for fingerprints, but were unable

to find them either on the interior or exterior of the car because of the weather conditions. There was testimony that it was very wet the evening of December 26.

There was testimony given that on the evening of December 28, two days following the homicide, Investigators Duncan and Wiley went to a gas station at 63rd and Wabash where they saw a group of people. All of the group fled when the officers approached except Reginald Brown, who accepted the request to enter the squad car and speak with the officers. Brown told them that he had heard who killed Oscar Boyd and he would be willing to give a statement to that effect.

At trial, there was a variation between what Officer Wiley remembered about the conversation with Brown and what Officer Duncan remembered. Duncan testified that he recalled talking with Brown on December 27, and he had no memory of a written transcript being taken of the conversation. Officer Wiley testified that he and Duncan spoke with Brown on December 28, and that a written statement had been taken from Brown. Wiley stated that he had misfiled Brown's statement among his own case materials and had not located it until after the trial had begun.

Officer Wiley testified that after speaking with Reginald Brown, he and Officer Duncan went to 6215 South Wabash, apartment 1002, at approximately 9 p.m. on December 28. This was the home of Leon Dunagan, the defendant. Upon arriving, the officers informed Mrs. Dunagan, Leon's mother, that they wanted to take Leon to their office and talk to him about a shooting. Mrs. Dunagan agreed, and they handcuffed the defendant and left the building. As they left the building, 15 to 20 sniper shots were fired at Dunagan, Officer Wiley and Officer Duncan. The three reached the squad car and proceeded to the police station where Officer Wiley discovered he had been shot. Investigator ancan took the defendant into the building, cuffed him to a bracket, and took Wiley to the hospital.

When Officer Duncan returned to headquarters, he advised the defendant of his constitutional rights, and the defendant told the officer that he would like to speak with his mother before he proceeded. The officer allowed Dunagan to use the telephone, at which time defendant placed two calls. After making the calls, defendant told the officer he had spoken with his mother and he wanted to talk about the shooting.

Officer Duncan testified the defendant stated that on the night of December 26, 1971, he received a car from Michael Harding and picked up John Shaw, James Massey and Dean Montgomery. After driving the car for awhile, they approached the intersection of 63rd and Wabash where a Cadillac backed up in front of the Volkswagen. Someone then

jumped out of the Cadillac and the four in the Volkswagen got out of the car and began to run in a northeasterly direction. One of the persons in the Cadillac yelled "Halt," and the defendant became frightened, reached into his pocket, pulled out a pistol, turned and shot one time at the man saying halt. The defendant continued running until he reached the 10th floor at 6215 South Wabash. Defendant told Officer Duncan that he used a .38 automatic pistol and he threw it into the incinerator on the 12th floor of 6215 South Wabash.

Thereafter, Investigator Duncan called assistant State's Attorney Thomas J. Cullinan. When Mr. Cullinan arrived, he again advised defendant of his constitutional rights and asked him if he still wanted to give a statement. The defendant replied that he would give a statement. Cullinan called Claude Cole, a court reporter, who arrived shortly thereafter to take the statement. The defendant gave a statement to Mr. Cullinan in the presence of Investigator Duncan and Mr. Cole. There was some discrepancy in the testimony between what Investigator Duncan recalled about the statement and what Mr. Cole remembered. Officer Duncan testified that the statement was immediately typed by Mr. Cole and read to the defendant. However, Mr. Cole testified that the statement was typed later and was not read to the defendant in his presence. The defendant never signed the statement.

At trial, James Massey, Dean Montgomery and John Shaw testified they had all been with defendant on December 26, 1971, riding around in the red Volkswagen. They also testified that the Cadillac had blocked their path and they all fled toward 6215 South Wabash. All three said they heard a shot, but none testified that he actually saw the defendant use the gun. James Massey testified that upon arriving at the Wabash building on the 10th floor he spoke with the defendant. He asked the defendant whether he had shot the man and the defendant said he thought the decedent was going to shoot him.

On the basis of the evidence, the jury found the defendant guilty of murder. Dunagan was sentenced to imprisonment for not less than 50 years and not more than 100 years.

Defendant's first contention on appeal is that the trial court erred in refusing to quash the arrest of the defendant and suppress statements and evidence obtained as a result of that arrest, which defendant contends was illegal. We reject that argument.

Defendant takes the position that the police officers based their arrest of defendant only on the statements made to them by an informant— someone whom they had not seen before nor received any information from prior to December 28, 1971. Defendant cites *In re Woods* (1974), 20 Ill. App. 3d 641, 314 N.E.2d 606, in which the court stated that a general

description is insufficient to provide the probable cause which is necessary to justify an arrest unless it is supported by other relevant facts and circumstances known to the arresting officer.

■■ Probable cause exists for an arrest when the facts and circumstances that the arresting officer has knowledge of are sufficient to warrant a person of reasonable caution in believing that an offense has been perpetrated and the person arrested has committed the offense. *People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356, 358.

Whether probable cause exists in a certain case depends upon the totality of the facts and circumstances that the officer is aware of at the time of the arrest. *People v. Glenn* (1978), 63 Ill. App. 3d 344, 348, 380 N.E.2d 390, 393.

Defendant asserts in the instant case that probable cause for an arrest was lacking and relies on *In re Foster* (1978), 66 Ill. App. 3d 193, 383 N.E.2d 755, to substantiate his position. In *Foster*, the trial court found that there had been probable cause for the arrest of the defendant, but the appellate court reversed the decision. The appellate court held that the State's only evidence for justifying a finding of probable cause was an unknown informer believed defendant committed the offense and the defendant had been seen running across the street in the evening a week after the crime was committed. The court stated:

> "The law in Illinois is clear that an arresting officer may rely upon information supplied by an informer in determining whether probable cause exists 'if the reliability of the informant has been previously established or independently corroborated.' " (*Foster*, 66 Ill. App. 3d 193, 197.)

The court did not find the State had established that the informer was reliable, and evidence of the defendant running across the street a week later did not provide the necessary probable cause for arrest.

The *Foster* case is distinguishable from the instant case. Although there was an unknown informer, Reginald Brown, whom the police did not know nor had they ever obtained information from him previously, this was not the only basis for defendant's arrest. When the officers took the statement from Reginald Brown, they had already spoken with Richard Brunson and Barbara Abston who gave a description of Oscar Boyd's assailant. The officers knew that there had been an automobile theft and a shooting and the persons involved had run to the building at 6215 South Wabash. They also knew the persons involved were in their teens. Brown told the officers that he had heard about a car being stolen, that there was a shooting, and that the offender was in his teens. All of this information was merely a corroboration of what the police had already obtained from Richard Brunson and Barbara Abston. The only information Brown supplied that was not corroborated was the name of

the defendant and where he lived. Defendant lived at 6215 South Wabash—the same building where the witnesses said the assailant ran after the shooting.

It is clear from the facts in this case that the unknown informer's reliability was independently corroborated by the witnesses to the offense.

Defendant cites other cases, but they only possess one element, the unknown informer, which is not enough to provide probable cause for an arrest.

■ Since defendant's arrest was based on specific information from an informer, together with facts the arresting officers were already aware of, there was probable cause for the arrest of defendant. Therefore, the arrest was legal and all statements and evidence flowing from that arrest were properly admitted at trial.

Defendant next contends that the trial court erred in failing to suppress the statement made by him because his mother was not present. We disagree.

The facts indicate that defendant (who was 17 years of age at the time of the incident) was in police custody when he was first given the *Miranda* warnings. At that point, he asked the officer present whether he could telephone his mother. Defendant placed two phone calls and then told the officer he was ready to discuss the shooting. He recounted the incident to the officer, after which the officer telephoned the assistant State's Attorney who arrived shortly thereafter. The attorney gave defendant his second *Miranda* warnings and asked about the presence of his mother. The defendant indicated that he had spoken with his mother that night and she had to go to work early the next morning. Defendant also stated that his mother told him she would do what she could the next day. The defendant then gave a statement which was recorded and read into evidence at the trial. The statement was never signed by defendant nor was the statement itself allowed into evidence. However, defendant contends that because his mother was not present during the questioning it became incumbent on the police to cease their questioning. We are not in accord with defendant's position.

Illinois courts have held that the failure to have a parent or guardian present during the questioning of a juvenile does not automatically render the statements made at that time inadmissible. *In re Bizzle* (1976), 36 Ill. App. 3d 321, 326, 343 N.E.2d 633, 638.

■ Determining whether a statement is voluntary depends on a totality of the circumstances. (*In re Shutters* (1977), 56 Ill. App. 3d 184, 186, 370 N.E.2d 1225, 1227.) The facts in this case would not render the statement of defendant inadmissible. The defendant was given *Miranda* warnings, was asked whether he wanted his mother present, and was given the

opportunity to call his mother which he stated he had. After all this, defendant proceeded to give a statement about the shooting. In addition, the questioning was not subsequent to an extended period of custody or interrogation. There was no evidence of coercion or physical abuse in the record. In light of all these reasons, we find no error in the refusal of the trial court to suppress defendant's statement.

Defendant's third contention is that the trial court erred in refusing to grant a new trial and in refusing to order the prosecution to correct alleged erroneous testimony presented by Officer Duncan and Mr. Brunson. The People maintain that there was no false testimony and it was impossible for the prosecutor to correct apparent inconsistencies in the testimony. The People also maintain that defendant was not prejudiced by the lack of such a correction in the testimony. We must agree with the People's position.

Defendant relies on *Napue v. Illinois* (1959), 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217, for the basis of his argument. *Napue* stands for the proposition that the failure of the prosecutor to correct the testimony of the witness whose testimony he knew to be false denied the defendant due process of law in violation of the fourteenth amendment. The principles elicited in *Napue* require that the prosecution know that the testimony is false before it becomes incumbent on the prosecution to correct the testimony.

In the instant case, Officer Duncan and the court reporter, Claude Cole, differed in their recollection about the facts involving the taking of defendant's statement. Duncan testified that the defendant's written statement was immediately typed at the headquarters where defendant was detained and then was either read to defendant or read by the defendant. Cole testified that defendant's statement was not typed at headquarters but was taken by him to 26th and California, the criminal courts building, and typed there. Cole did not remember the statement being read in his presence. Neither Officer Duncan nor Claude Cole stated defendant signed the statement.

Richard Brunson testified that he saw pictures at 11th and State Streets, police headquarters, on December 27, 1971, but could not identify anyone as the killer of Oscar Boyd. A police report was introduced at the hearing on defendant's post-trial motion which stated that Brunson had looked at pictures all day and he "liked" Terrill Dunagan's picture and also "two look-alikes."

The defendant contends that it was responsibility of the prosecutor to correct the alleged false statements made by Officer Duncan and Mr. Brunson. We disagree.

Brunson gave testimony which differed from a later-found police report, but it was not proved that the prosecutor was aware of the report

during trial. Even if he had been aware of the report earlier, he could not be held responsible for Brunson's statements during the trial. Also, with regard to Duncan's and Cole's statements, both accounts were presented to the jury and contradictions in testimony such as these go to the weight of the evidence and do not indicate perjury. *People v. Nuccio* (1973), 54 Ill. 2d 39, 50, 294 N.E.2d 276, 282.

The Illinois cases cited by defendant are distinguishable from the instant case. They involve testimony known to be false by the prosecutor or his office. *People v. McKinney* (1964), 31 Ill. 2d 246, 201 N.E.2d 431; *People v. Lueck* (1962), 24 Ill. 2d 554, 182 N.E.2d 733.

In *People v. Martin* (1970), 46 Ill. 2d 565, 567-68, 264 N.E.2d 147, 148, the court held that where the falsity lies in the testimony of the law enforcement officer who gave favorable evidence to the prosecutor and despite the prosecuting attorney not being aware of the falsity, the prosecution is charged with knowledge of its agents which include the police. Although, it is alleged, Officer Duncan gave false testimony in regard to the statement of defendant, his testimony was not the only evidence on the issue and the jury was properly permitted to weigh the evidence in their own minds.

■ The testimony involved here only concerned inconsistencies in testimony, not known false statements, and it was not the responsibility of the prosecutor to correct those inconsistencies. For these reasons, the trial court did not commit error by refusing to grant a new trial based on this contention.

Next, defendant contends that the trial court should have suppressed testimony of the photographic identification made by Richard Brunson. The State maintains on appeal that the evidence of the photographic identification was properly admitted since the identification procedure used did not lead to a substantial likelihood of irreparable misidentification. We agree that the trial court correctly admitted the photographic identification.

■ In considering whether a pretrial identification by photograph will be set aside after an eyewitness identification at trial, the court will only do so "* * * if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States* (1968), 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 1253, 88 S. Ct. 967, 971.

To determine whether such a misidentification has occurred, the court will look at certain circumstances, the opportunity of the witness to view the offender at the time of the crime, the accuracy of the witness' prior description of the offender, the witness' degree of attention, the certainty of the identification, and the length of time between the crime and the confrontation. (*Neil v. Biggers* (1972), 409 U.S. 188, 199-200, 34 L.

Ed. 2d 401, 411, 93 S. Ct. 375, 382.) In view of these criteria, we cannot agree with defendant's position in the present case.

At the time of the offense, Richard Brunson testified that he had the chance to see defendant when he was approximately 10 to 20 feet from him while defendant was in the Volkswagen. The witness Brunson also gave a fairly accurate description of the defendant prior to viewing the photographs, and there was a period of only 2 or 3 days after the crime that he picked out defendant's photograph.

■■ We do agree with defendant when he states that the utilization of a photograph is not desirable when the suspect is in custody and a lineup would be possible. (*People v. Holiday* (1970), 47 Ill. 2d 300, 307, 265 N.E.2d 634, 637.) However, we cannot conclude that weighing all the factors in this case it gave rise to a substantial likelihood of irreparable misidentification, since Brunson had observed the defendant on the night of the offense.

As defendant's next contention, he asserts that the trial court erred in refusing to grant a new trial when after the trial a police report was discovered concerning statements made by a witness. The State maintains that the police report did not contradict Mr. Brunson's testimony and therefore disclosure to the defendant was not required.

The court did not commit error in refusing to grant a new trial based on the discovery of a police report after the trial. Defendant states that this issue is in accord with *Brady v. Maryland* (1963), 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97, which stands for the principle that suppression by the prosecution of evidence favorable to an accused upon request violated due process where such evidence is material either to guilt or punishment. The supreme court also states that this is irrespective of the good or bad faith of the prosecution.

We do not disagree with the principle enunciated in *Brady*, but we cannot agree with defendant's use of it in the present case.

The police report that was withheld stated that on December 28, 1971, Richard Brunson looked at pictures the entire day, and he picked three pictures. The report stated he "likes Terrill Dunagan" and he "Picked two look-alikes." This report was brought to the attention of the court for the first time on defendant's post-trial motion.

The witness testified during the trial that he viewed photographs in police headquarters at 11th and State on December 27, 1971, but could not identify Oscar Boyd's assailant.

■■ The report does not impeach Brunson's testimony concerning his identification of the defendant. Brunson testified that he did not identify any photographs when he went to the police station. Even though the police report stated he "likes" someone and picked two "look-alikes" does not make the report inconsistent with Brunson's testimony. These

statements were not material to the guilt or punishment of the accused, nor was the evidence favorable to defendant. Brunson had given a description of defendant prior to viewing the photographs, and the record indicates that several other people testified that the driver of the Volkswagen was the man who fired the shot. The police report was not a material factor in determining defendant's guilt, and a new trial should not have been granted on that basis.

Next, defendant argues that the trial court erred when it failed to give jury instructions on voluntary manslaughter and accomplice testimony, and an instruction limiting the purposes for which John Shaw's testimony could be used. The State maintains that there was no evidence to support instructions on voluntary manslaughter and accomplice testimony. The State also maintains that the omission of an instruction on John Shaw's testimony was not error.

It is well settled that if evidence exists in the record which would reduce the crime to a lesser included offense if believed by a jury, the defendant has a right to an instruction and form of verdict defining the lesser included offense. (*People v. Simpson* (1978), 57 Ill. App. 3d 442, 445, 373 N.E.2d 809, 811.) It is also well established that such an instruction should not be given if the evidence clearly shows that the crime was murder and no evidence exists to support a conviction of manslaughter. *People v. Handley* (1972), 51 Ill. 2d 229, 235, 282 N.E.2d 131, 136.

■■ Serious provocation by the deceased is necessary to reduce the crime from murder to voluntary manslaughter, and the only types of provocation recognized as serious enough require more than mere words, gestures or trespass to property. (*People v. Free* (1976), 37 Ill. App. 3d 1050, 1052, 347 N.E.2d 505, 507.) Such serious provocation did not exist in the instant case. The most provocative action on the deceased's part was the shouting to defendant "Hey." The provocation on the part of the deceased was so lacking to justify such an attack that there could not have been an instruction for voluntary manslaughter, and the trial court was correct in its denial.

Defendant claims that the trial court erred in not allowing an accomplice instruction. We disagree. The instruction is properly refused when there is no evidence that the witness is an accomplice in the crime. An accomplice has generally been defined as one who could himself have been indicted for the crime as either a principal or accessory. *People v. Drysdale* (1977), 51 Ill. App. 3d 667, 673, 366 N.E.2d 394, 398.

Apparently, from defendant's brief he wanted the three youths who were in the Volkswagen to have been considered defendant's accomplices. The evidence is devoid of any facts or circumstances which would make any of them guilty of the murder as a principal or an

accomplice. The trial court was correct in denying the instruction. Defendant also contends that a limiting instruction should have been given on John Shaw's testimony. The defendant does not state in his brief for what purpose Shaw's testimony should have been limited nor what type of instruction should have been given.

The trial court, when giving the jury instructions, did include that evidence received for a limited purpose should not be considered for any other purpose.

We agree with the State that the trial court properly omitted all of the jury instructions which the defendant now asserts should have been given.

Defendant urges that the prosecutor made comments in his closing argument on defendant's failure to testify. The State maintains that the prosecutor was not referring to the failure of defendant to testify when he stated the evidence was uncontradicted; but he was merely making an accurate summary of the evidence. We agree with the prosecution.

The Federal Constitution and the statute both forbid the court and the prosecutor from making any direct reference to a defendant's failure to testify. *People v. Hopkins* (1972), 52 Ill. 2d 1, 6, 284 N.E.2d 283, 285.

However, the prosecutor may refer to the fact that the testimony of the State's witnesses is uncontradicted, even though the defendant would be the only person who could contradict the evidence. *People v. Cook* (1975), 31 Ill. App. 3d 363, 366, 334 N.E.2d 834, 836.

■■ Defendant refers to *People v. Blissitt* (1973), 12 Ill. App. 3d 551, 554, 299 N.E.2d 562, 564, where they cite the standard for determining the propriety of closing arguments, as whether the reference in closing argument was intended or calculated to direct the attention of the jury to defendant's failure to testify. In applying this standard to our facts, we cannot find that the statements made by the prosecutor were improper. There was no apparent intention to draw the jury's attention to the defendant's failure to testify, and the court therefore committed no reversible error.

■■ Defendant next contends that the court committed reversible error in calling John Shaw as a court's witness. The State maintains that it could not vouch for Shaw's veracity, and his testimony was relative to direct issues in the case so it was proper to call him as a court's witness.

Where the formal rules might cause a failure to bring the truth to the trier of the facts, Illinois courts are more willing to allow the trial judge to call a person as a court's witness. *People v. DeFord* (1978), 59 Ill. App. 3d 942, 944, 376 N.E.2d 97, 99.

There were important factors before the trial court which supported the State's hesitancy in vouching for the veracity of John Shaw. Shaw had given a signed statement to the police which said that he saw the defendant fire a shot on the evening of December 26, 1971. When the

State called him to testify, he said he had not been near the scene of the shooting on that evening nor had he seen defendant fire a shot. At one point in the examination of Mr. Shaw by the prosecution, he denied giving the response attributed to him in the statement regarding defendant's firing of the shot. It is clear from the contradictory nature of Shaw's statements that the State could not vouch for his veracity, and it was necessary to call him as a court's witness to elicit the truth from him.

The defendant cites *People v. Bailey* (1975), 60 Ill. 2d 37, 322 N.E.2d 804, as controlling in the present case. We disagree. In *Bailey*, the court held that using prior inconsistent statements of a witness can only be used for impeachment purposes and not as substantive evidence. But, the reason *Bailey* was reversed was not because the witness was questioned concerning his prior statements, but because the State attempted to impart a substantive character to such prior statements.

In the present case, there was no effort to treat Shaw's prior statement as substantive evidence. John Shaw directly contradicted his prior statements when he was on the witness stand. Such a change in his position caused the State to question his veracity as a State's witness and, under the circumstances, the court was correct in calling Shaw as a court's witness.

As defendant's next contention, he states that the trial court committed error by excluding testimony concerning the murder weapon, the circumstances under which the weapon was recovered, and how it was subsequently destroyed.

During the trial, the prosecution attempted to introduce testimony to the jury that related to the identification and destruction of the murder weapon. The defendant objected to this testimony being allowed and the court sustained his objection based on the fact that defendant was not able to perform his own tests with the gun since it had been destroyed. When the defendant attempted to offer the same evidence in his case-in-chief, the court sustained the prosecution's objection and stated the evidence could not be introduced unless the defendant withdrew his earlier objection. The defendant would not withdraw his objection and the evidence was excluded. We do not believe that if any error was committed it reasonably affected the result of the trial. We do think that the test enunciated in *People v. Olivier* (1972), 3 Ill. App. 3d 872, 878, 279 N.E.2d 363, 367, is the appropriate rule. The court stated that it was not the policy of the court to reverse a decision because error had been committed unless it appears that real justice has been denied or a finding of guilty may have resulted from such error.

In the instant case, it was not shown that such an exclusion caused the finding of guilty. The testimony in this case was overwhelmingly against the defendant. As stated earlier, there were several witnesses who gave

testimony that implicated defendant in the crime. The defendant contends that had this testimony been allowed it would have cast doubt on the reliability of the statement made by him relating to the disposition of the gun. This would not have been the case due to defendant's own admissions about the crime. We do not believe that based on the foregoing such an error, if any, was a denial by the trial court of "real justice" to the defendant.

As his final contention, defendant argues that the trial court limited cross-examination of John Shaw and other witnesses. The People maintain that the trial court acted within its discretion in sustaining objections made by the People.

The trial court may use its discretion in determining the latitude that is to be enjoyed by the attorneys during cross-examination of witnesses. Only where there is a clear abuse of discretion which results in manifest predjudice to defendant will a reviewing court interfere. *People v. DeSavieu* (1973), 14 Ill. App. 3d 912, 919-20, 303 N.E.2d 782, 789.

■■ We have found that in reviewing the record no prejudice occurred to defendant due to the limiting of cross-examination of the State's witnesses. The defendant cites several objections made during his cross-examination, the first of which was defendant's attempts to ascertain whether John Shaw was on furlough from a juvenile institution. He relies on *People v. York* (1975), 29 Ill. App. 3d 113, 329 N.E.2d 845, which held that the record of juvenile proceedings is discoverable and admissible to show bias of the witness as a result of leniency. This does not apply to our present case. There was no indication by defense counsel that he had any knowledge of threats or promises made to Mr. Shaw to show bias. The trial court stated that there were appropriate ways to bring up a prior record, but because defense counsel lacked a sufficient basis the court sustained the State's objection. We do not think the trial court abused its discretion by sustaining the objection made by the State.

The defendant cites several other instances in his brief where the trial court allegedly improperly sustained counsel's objections. We do not need to go into the other objections that defendant alleges were made at trial. We have made a thorough review of the record and find that the trial court did not abuse its discretion in sustaining the objections.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P. J., and ROMITI, J., concur.