Roy Gerald **HAMRICK,** Administrator of the Estate of Steven Hamrick, Deceased, Plaintiff,

v.

Dennis **LEWIS,** individually and as Sergeant of the Villa Park Police Department; Ronald Ohlson, individually and as patrolman of the Villa Park Police Department; Roger Kniceley, individually and as patrolman of the Villa Park Police Department; Norman Hall, individually and as detective of the Villa Park Police Department; Scott Schroeder, individually and as patrolman of the Villa Park Police Department; Donald Grobl, individually and as patrolman of the Villa Park Police Department; William Kohnke, as Chief of Police of the Villa Park Police Department; James Glennon, Individually and as patrolman of the Lompard Police Department; Mr. Laitsch (first name unknown), individually and as patrolman of the Lombard Police Department; The Village of Villa Park, a Municipal Corporation; The Village of Lombard, a Municipal Corporation; and Other Employees of the Above-mentioned Corporations as yet unknown to Plaintiff at this time; Greg Snyder, individually and as an employee of the Villa Park Police Department, Defendants.

No. 80 C 6040.

United States District Court, N. D. Illinois, E. D.

June 1, 1982.

Michael Zazzara, Leonard M. Ring & Associates, Chicago, Ill., for plaintiff.

John Murphy, Jr., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Roy Gerald Hamrick brought this civil rights action in his capacity as administrator of his son Steven's estate against the Villages of Villa Park and Lombard, Chief William Kohnke of the Villa Park Police Department,[1] eight individual

---

1. In an earlier opinion, this Court dismissed the claims against the villages based upon the asserted existence of a governmental policy or custom under *Monell v. Department of Social*

police officers of the Villa Park and Lombard departments, a police informant, and several unnamed village employees seeking $10,000,000 in compensatory and punitive damages for the defendants' alleged violation of Steven's fourth, fifth, sixth, eighth and fourteenth amendment rights as well as 42 U.S.C. § 1983. Hamrick alleges, in substance, that during the early morning hours of August 15, 1980, certain of the police defendants forcibly entered Steven's home without a search or arrest warrant, chased Steven into the bathroom, smashed down the bathroom door, and shot him in the back of the head as he apparently tried to flush pills or other drugs down the toilet. Steven died of his wounds approximately one hour later.[2]

This matter is now before the Court on the individual Villa Park police defendants' motion for partial summary judgment on the issue of whether they improperly attempted to arrest Steven in his home without a warrant. Defendants maintain that they had probable cause to arrest Steven for dealing in drugs and unlawful possession of a weapon and that certain exigent circumstances justified their forcible entry into Steven's home without a warrant in order to place him under arrest. In addition, defendants contend that the existence of probable cause and exigent circumstances aside, they acted in good faith as a matter of law, and that they are thus clothed with qualified immunity for their actions.

In addition, the two Lombard police officers involved in the raid on Steven's home also move for summary judgment on the

grounds that their involvement in the events that precipitated Steven's death was peripheral and so minimal that no judgment could be rendered against them as a matter of law. For the reasons set forth below, the motion for summary judgment will be denied in part and granted in part.

I

Since the Supreme Court's decision in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), it is clear that police officers may not enter a criminal suspect's home for the purpose of making a warrantless arrest in the absence of exigent circumstances that justify the entry. *See also United States v. Acevedo*, 627 F.2d 68 (7th Cir. 1980); *People v. Abney*, 81 Ill.2d 159, 41 Ill.Dec. 45, 407 N.E.2d 543 (1980). Courts have cautioned against use of a "check-list type analysis" in determining whether exigent circumstances justify a warrantless entry to make an arrest in the suspect's home. *United States v. Acevedo, supra*, 627 F.2d at 70. The better approach is to analyze each case on its own peculiar facts in order to ascertain whether exigent circumstances justify the warrantless entry and arrest in a particular case. Nevertheless, some courts have identified certain factors that are relevant to any inquiry into exigency after *Payton*. *See, e.g., United States v. Acevedo, supra*, 627 F.2d at 70 n.2, citing *Dorman v. United States*, 435 F.2d 385, 392–93 (D.C.Cir.1970); *People v. Abney, supra*, 407 N.E.2d at 547–50; *People v. Thompson*, 93 Ill.App.3d 995, 49 Ill.Dec. 468, 474, 418 N.E.2d 112, 118 (1st Dist. 1981).[3]

---

*Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), for failure to state a claim upon which relief could be granted. At the same time, the Court denied Chief Kohnke's motion to dismiss and held that the complaint adequately stated a claim for relief against him. *See Hamrick v. Lewis*, 515 F.Supp. 983 (N.D.Ill.1981).

2. Jurisdiction over the federal claims is asserted pursuant to 28 U.S.C. § 1343 and over the pendent state claims in accordance with principles enunciated in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

3. These factors include:
 (1) Whether the suspect was accused of a "grave offense," particularly a crime of violence; (2) whether the arresting officer reasonably believed the suspect was armed; (3) whether there was a "clear showing" of probable cause; (4) whether the arresting officer had a strong reason to believe the suspect was on the premises; (5) whether the suspect was likely to escape if not immediately apprehended; (6) whether the entry was peaceful; and (7) whether the entry was

■ In the case at bar, serious questions exist with regard to the exigency of the circumstances under which the Villa Park police made their warrantless entry into Steven Hamrick's home. The existence of such a material factual question precludes the entry of summary judgment at this juncture. *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1,* 603 F.2d 7, 10 (7th Cir. 1979). For example, while the police concededly had probable cause to believe that a crime had been committed and that Steven had committed the crime, the suspected offense or offenses were not violent. Rather, Steven apparently was to be charged with unlawful possession of a controlled substance or possession with intent to distribute and, possibly, with unlawful possession of a weapon. *Compare People v. Abney, supra* (aggravated battery); *People v. Thompson, supra* (aggravated battery). Moreover, although defendants contend that they were informed that Steven planned to leave town the next day or in the near future, it is doubtful that Steven would have made his escape at 4:30 a. m. when he had no reason to believe that he was suspected of committing a crime. Plaintiff is at least entitled to test the credibility of the defendants or their informant on this point at trial. Finally, the entry was far from peaceful. The officers broke down the front door of Steven's home at 4:30 a. m., allegedly without first announcing that they were police officers. *See* Amended Complaint at ¶ 23.

In addition, defendants have not shown that as a matter of law the situation demanded immediate action or that they could not have obtained a warrant without undue delay. Rather, the reasonable inferences from the facts, to which the non-moving party is entitled, might reasonably support a contrary conclusion. The raid on Steven's home occurred at approximately 4:30 a. m., more than two and one-half hours after the police were initially informed that he had allegedly sold an informant a sawed-off shotgun and offered to sell him drugs. Al-

though the officers tried repeatedly but unsuccessfully to contact a state's attorney during that time in order to determine whether they needed a warrant to arrest Steven, they have not established that as a matter of law it would have been unreasonable for them to wait for a few more hours until a state's attorney would certainly have been available instead of proceeding immediately with their pre-dawn raid. In sum, defendants have not established to the Court's satisfaction that exigent circumstances justified their actions in making a warrantless, forcible entry into Steven's home to effect his arrest.

■ Defendants have also not established that as a matter of law they are entitled to the qualified immunity afforded to those public officials who act in good faith. *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1972); *Hayes v. Thompson,* 637 F.2d 483 (7th Cir. 1980). As a general rule, questions of motive and intent have been held to be particularly inappropriate for disposition on a motion for summary judgment, *Conrad v. Delta Air Lines, Inc.,* 494 F.2d 914, 918 (7th Cir. 1974); *Moutoux v. Gulling Auto Electric,* 295 F.2d 573, 576 (7th Cir. 1961), and the party opposing summary judgment is entitled to have all reasonable inferences from the evidence drawn in his favor. *Id.* In the instant case, the police officers were admittedly aware of the Supreme Court's pronouncement in *Payton v. New York* to the effect that, absent exigent circumstances, they could not make a warrantless arrest in Steven's home. It could be argued that they were sufficiently unsure of the legality of their actions that they waited two and one-half hours after they were first informed of Steven's alleged crime before they finally decided to act. They apparently felt it was necessary to contact a state's attorney to determine whether they needed

made during daylight hours. 435 F.2d at 392–93.

*United States v. Acevedo, supra,* 627 F.2d at 70 n.2.

a warrant, but they ultimately settled for the opinion of another law enforcement officer who was not an attorney.

True, the facts in the record might also support defendants' argument that they acted in utmost good faith under the circumstances in this case. But, where the facts support conflicting inferences, summary judgment is inappropriate. *See, e.g., Winters v. Highlands Insurance Co.,* 569 F.2d 297 (5th Cir. 1978) (although basic facts were not in dispute, summary judgment was inappropriate where parties disagree regarding the material inferences to be drawn from those facts).

Accordingly, defendants' motion for summary judgment with respect to the arrest and their good faith defense will be denied.

## II

The two Lombard police officers, Glennon and Laitsch, named as defendants in this action argue that they are entitled to summary judgment because they were not involved and did not participate in any meaningful way in the incidents that form the basis for this lawsuit. Plaintiff contends, on the other hand, that although Glennon and Laitsch played no part in the decision to enter Steven's house without a warrant or the planning and execution of the arrest, and never entered Steven's house but instead remained outside to guard against a possible escape, they are nevertheless liable for their failure to prevent all or part of what happened during the night in question. Plaintiff cites *Byrd v. Brishke,* 466 F.2d 6 (7th Cir. 1972), for the principle that police officers have a duty to protect persons from the unwarranted brutality of their fellow officers which occurs in their presence or otherwise within their knowledge.

In the Court's view, the record evidence, even when viewed in the light most favorable to the non-moving party, is insufficient to support an inference of liability with respect to Glennon and Laitsch as a matter of law. Although it is true that "one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge," *Byrd v. Brishke, supra,* 466 F.2d at 11, the case at bar does not present such an extreme situation with respect to officers Glennon and Laitsch. There is no evidence that the Lombard officers were in any position to stop the Villa Park officers from making an allegedly unlawful entry into Steven's house or to prevent the harm that befell Steven once the Villa Park officers were inside the house. They did not help to plan the raid or to carry it out, and there is no evidence that they were even aware of the circumstances surrounding the Villa Park officers' decision to arrest Steven that *night.*[4]

The facts in the instant case are much different than those in *Byrd,* for example, in which the defendant officers were actually present when other officers beat the deceased and they failed to intercede with their fellow officers despite their proximity to the alleged wrongs. Similarly, in *Spence v. Staras,* 507 F.2d 554, 557 (7th Cir. 1974), the defendant officers were found liable for their failure to prevent their fellow officers from beating the plaintiff whom they knew to be nonverbal and unable to call for help or defend himself and whom they knew had been beaten on at least twenty prior occasions. In the case at bar, it is undisputed that the Lombard officers' involvement in the events of August 15, 1980, was limited to their assignment to watch the side and rear of Steven's house while the other offi-

---

4. Although we note that Count II of plaintiff's amended complaint alleges that defendants Glennon and Laitsch were involved in a conspiracy to deprive Steven of his constitutional rights, plaintiff has brought forth no evidence, circumstantial or otherwise, to show that these two defendants joined or participated in any alleged conspiracy. *Cf. Richardson v. City of Indianapolis,* 658 F.2d 494, 500 (7th Cir. 1981) (non-shooting defendant police officers entitled to directed verdict in absence of evidence that they failed to act affirmatively to prevent shooting of decedent or that they were involved in a conspiracy to deprive decedent of his rights).

cers actively participated in the events that resulted in Steven's death. *See* Final Pretrial Order, Statement of Uncontested Facts at ¶ 20.

Accordingly, summary judgment is granted in favor of defendants Glennon and Laitsch but denied as to the other moving defendants. It is so ordered.