**Philip OWUSU, Seth Owusu, Daniel Owusu and Lucy Owusu, Plaintiffs,**

v.

**Officer Daniel GRZYB, Star No. 7434, et al., Defendants.**

**No. 89 C 2759.**

United States District Court,
N.D. Illinois, E.D.

Oct. 30, 1990.

---

E. Garnet Fay, Daniel E. Murphy, O'Brien, Hanrahan, Wojcik & Fay, Chicago, Ill., for plaintiffs.

Michael I. Lieberman, Asst. Corp. Counsel, Kelly R. Welsh, Acting Corp. Counsel, City of Chicago–Dept. of Law, Yvone D. Spradley, City of Chicago, Department of Law, Chicago, Ill., Thomas J. Platt, Kurnik, Cipolla, Stephenson and Barasha, Ltd., Arlington Heights, Ill., Steven Hogroian, Ancel, Glink, Diamond, Murphy, Cope, P.C., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiffs Philip, Seth, Daniel and Lucy Owusu filed their amended complaint in this case alleging that members of the Chicago, Dolton and Riverdale police forces unlawfully entered their home and arrested Philip, Seth and Daniel. Plaintiffs have named as defendants the individual officers who entered plaintiffs' home and were present during the arrests, as well as the three municipalities which employed the various police officers: the City of Chicago, the Village of Dolton and the Village of Riverdale.

Defendants now have moved for summary judgment on the amended complaint. For the reasons stated below, their motions must be granted in part and denied in part.

## I. BACKGROUND FACTS

Philip and Lucy Owusu are married to each other and live at 13822 State Street, Riverdale, Illinois. They have two sons—Daniel and Seth—and two daughters—Cynthia Asiedu and Theresa Achampong.

Philip and Lucy Owusu's daughter Theresa was married to Cristos Achampong. They had two children—Mizpah Achampong and Kwadwo Achampong. Theresa also had a child by a former marriage, named Vivian Lawrence.

On January 2, 1988 Theresa died. Thereafter, Philip and Lucy Owusu adopted Vivian. Marina and Geoffrey Coleman, friends of Theresa's living in Wisconsin, became the legal guardians of Mizpah and Kwadwo.

On Wednesday, November 23, 1988 Marina Coleman drove to Chicago to pick up furniture for her home in Wisconsin. She brought Mizpah and Kwadwo with her.

That evening she, Mizpah and Kwadwo met with members of the children's family, including their grandparents, Philip and Lucy Owusu. At that meeting arrangements were made to get together the next morning, Thanksgiving Day.

On the morning of Thanksgiving Day Philip Owusu, Cynthia Asiedu and Vivian Lawrence arrived at Marina Coleman's motel room. While Ms. Coleman was getting ready for the day she agreed to allow Mizpah and Kwadwo to go with Philip, Cynthia and Vivian to breakfast, with the understanding that they would return to the motel room. However, after breakfast, instead of returning Mizpah and Kwadwo to the motel room, Philip Owusu took them to his home in Riverdale. He told Ms. Coleman on the telephone that he would not return the children.

According to plaintiffs, at 2:30 p.m. that same day Ms. Coleman filed a report with the Chicago Police Department claiming that Philip Owusu had not returned Mizpah and Kwadwo. The Chicago police told Ms. Coleman that they needed documentation proving that she was the children's legal

guardian. Ms. Coleman returned to Wisconsin to secure the necessary papers.

The next day, Friday, November 25, Ms. Coleman drove back to Chicago with records relating to her legal guardian status. At 6:30 p.m. she presented these records to the Chicago police. Ms. Coleman filed a formal complaint, which Chicago police youth officers Daniel Grzyb and Frank DiGrazia were assigned to investigate. While at the police station Ms. Coleman told Officer Grzyb that she feared that the Owusus—who are citizens of Ghana—might take Mizpah and Kwadwo to Africa.

According to plaintiffs, the next day, Saturday, November 26, Officer Grzyb read and reviewed the General Offense Case Report concerning Ms. Coleman's complaint. He then drove with Officer DiGrazia to meet Ms. Coleman, but she was not in. Later, Officer Grzyb telephoned Ms. Coleman two or three times to see if she thought Philip Owusu would be home. Ms. Coleman told Officer Grzyb that she thought the Owusus probably would be at church in the morning and thus would not be home until afternoon.

At 1:50 p.m. Saturday Officers Grzyb and DiGrazia arrived at the Owusu home. According to plaintiffs, Officer Grzyb either knocked on the door or rang the bell of the home. Lucy Owusu was home at the time having lunch with Mizpah, Kwadwo and other family members. She came to the front door and opened the heavy front wooden door. According to plaintiffs one of the Chicago officers then opened the storm door and both officers entered the Owusu home, identifying themselves. The officers had no warrant.

Officer Grzyb then walked into the dining room of the Owusu home and asked the children sitting at the dining room table who Mizpah and Kwadwo were. Kwadwo, who at the time was seven years old, identified his sister, then age five, and himself. Officer Grzyb and DiGrazia then sat on the couch in the Owusu living room and waited for Philip Owusu to return home from church.

After about an hour Philip and Seth Owusu arrived at the Owusu house. Daniel Owusu arrived a short while later. The Owusus walked into the living room and spoke with Officers Grzyb and DiGrazia. According to plaintiffs, Philip Owusu told the officers to leave unless they had a warrant. Upon being informed by Officer Grzyb that the officers did not need a warrant, Philip Owusu questioned the genuineness of the guardianship papers the officers showed him. Plaintiffs claim Philip Owusu told the officers if they wanted to go in and take the two children they were free to do so, but he was not going to hand the children over to them.

One of the Chicago officers then radioed for assistance from the Riverdale police department. About ten minutes later Riverdale police officers Ray Gilmore and Gary Shadley arrived at the Owusu house and were let in the front door by the Chicago officer who called for assistance.

After further discussions with the Owusus, Officer Gilmore requested additional back-up. Dolton officers John Thomsen and Timothy Govern and Riverdale officers Ken Bonneau, Joseph Walker and John Golden responded to the call. Officer Thomsen and Govern, hearing yelling and screaming in the house, let themselves in the house. Officer Golden followed them into the house. One of the Chicago officers met Officers Walker and Bonneau on the front porch of the Owusu home and let them inside as well.

According to plaintiffs, the Owusus were arrested by Chicago Officers Grzyb and DiGrazia and Riverdale Officers Walker, Bonneau and Golden. Specifically, plaintiffs claim Officers Grzyb, DiGrazia and Walker arrested and handcuffed Philip Owusu. Officers Bonneau and Golden arrested Seth Owusu, who was shoved, wrestled to the floor and handcuffed in the process. And Officer Bonneau ordered the arrest of Daniel Owusu, who was in front of the Owusu home at the time. Daniel Owusu was grabbed, thrown to the ground and handcuffed.

According to defendants, the Owusus were arrested for obstructing the police

officers. According to plaintiffs, Philip Owusu merely commented that the officers were free to take the children, but he would not hand them over. Thus, plaintiffs claim they did nothing constituting obstruction.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In ruling on defendants' motions for summary judgment, the evidence of the plaintiffs as non-movants must be believed. All justifiable inferences must be drawn in plaintiffs' favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

All defendants have moved for summary judgment on all six counts of plaintiffs' amended complaint. The court shall address each count in turn.

### A. *Count I: Section 1983 Claim*

The officer defendants[1] claim that they are entitled to qualified immunity on Count I—plaintiffs' claim brought under 42 U.S.C. Section 1983. Summary judgment is the proper manner to resolve a claim of qualified immunity because it protects government officials from the costs of trial. *Rakovich v. Wade*, 850 F.2d 1180, 1205 (7th Cir.1988).

■ Under the doctrine of qualified immunity, "public officials performing discretionary functions are protected against suits for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Doe v. Bobbitt*, 881 F.2d 510, 511 (7th Cir.1989), *citing Harlow v. Fitzgerald*, 457 U.S. 800, 818,

102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This standard requires that "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

In Count I plaintiffs allege that the officer defendants violated their constitutional rights in two ways: (1) by unlawfully entering the Owusu home and (2) by unlawfully arresting Philip, Seth and Daniel Owusu. The officer defendants have claimed qualified immunity from damages for both of these alleged violations.

### 1. *Unlawful Entry*

Plaintiffs allege that the officer defendants unlawfully entered the Owusu Home. (Amended Complaint, Count I, ¶ 11.) Specifically, plaintiffs claim that the Chicago officer defendants[2] initially entered their home, followed an hour or so later by the Dolton[3] and Riverdale[4] officer defendants. Because the circumstances of their respective entries vary, the court first shall analyze the entry of the Chicago officer defendants and then the entry of the Dolton and Riverdale officer defendants. The court shall address the Section 1983 liability of the municipal defendants last.

### a. *Entry of the Chicago Officer Defendants*

■ The qualified immunity issue with respect to the Chicago officer defendants is whether in 1988 an official violated a clearly established constitutional right by entering a home without a warrant and without consent or some other exception to the Fourth Amendment's warrant requirement. The answer is yes.

In 1980 the Supreme Court held in *Payton v. New York* that the Fourth Amendment prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine

---

**1.** The phrase "officer defendants" refers to the individual defendants and not the municipal defendants.

**2.** Officers Grzyb and DiGrazia.

**3.** Officers Govern and Thomsen.

**4.** Officers Gilmore, Shadley, Bonneau, Golden and Walker.

felony arrest. 445 U.S. 573, 576, 100 S.Ct. 1371, 1374–75, 63 L.Ed.2d 639 (1980); *see also Welsh v. Wisconsin,* 466 U.S. 740, 750, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732 (1984) ("Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries.")

In this case there remains a genuine issue of material fact as to whether Lucy Owusu gave the Chicago police officers consent to enter her home. As noted above, according to plaintiffs, after Officer Grzyb either knocked on the door or rang the bell of the Owusu home, Lucy Owusu came to the door. She opened only the heavy front wooden door of her home, leaving the screen door shut. Plaintiffs claim that either Officer Grzyb or Officer DiGrazia then opened the storm door and both officers, without asking or receiving permission, simply entered the Owusu home. (12(m) Statement, ¶ 23.) Officers Grzyb and DiGrazia, on the other hand, maintain that Lucy Owusu invited them into her home. (Grzyb and DiGrazia Aff.'s at ¶ 8.)

On defendants' motion for summary judgment this court must believe the evidence of plaintiffs, drawing all justifiable inferences in their favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. Accepting plaintiffs' version of the facts as true as the court must for the purpose of this motion, the Chicago officer defendants entered the Owusu home with neither a warrant nor consent. *Cf. Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1344 n. 9 (7th Cir.1985) ("Simply opening a door to identify a person is far different from granting permission to enter the premises."). By so doing under requisite construction of the facts for the purpose of this motion, the Chicago officer defendants violated a clearly established constitutional right of the Owusus of which a reasonable officer would have known. Accordingly, the Chicago officer defendants' motion for summary judgment on Count I of plaintiffs' amended complaint must be denied.[5]

### b. Entry of the Dolton and Riverdale Officer Defendants

The Dolton and Riverdale officer defendants' motions for summary judgment on Count I of the amended complaint raise a different issue. In response to calls for assistance, the Dolton and Riverdale officers arrived at the Owusu home over an hour after the Chicago officer defendants. The various Dolton and Riverdale officers either were let into the Owusu home by the Chicago officers or merely opened the

---

5. The Riverdale defendants (but not the Chicago defendants) argue that exigent circumstances justified the Chicago defendants' entry into the Owusu home. However, to determine whether exigent circumstances exist the trier of fact must consider "whether the exceedingly strong privacy interest in one's residence is outweighed by the risk that delay will engender injury, destruction of evidence, or escape." *Llaguno v. Mingey,* 763 F.2d 1560, 1564 (7th Cir.1985), *quoting United States v. Acevedo,* 627 F.2d 68, 70 (7th Cir.1980).

Construing the evidence in the light most favorable to plaintiffs, it is clear for purposes of this motion that no exigent circumstances supported the Chicago defendants' warrantless entry into the Owusu home. When they entered the Owusu home, the Chicago defendants were not in "hot pursuit" of a criminal suspect. On the contrary, Philip Owusu had failed to return Mizpah and Kwadwo to Ms. Coleman two days before defendants even arrived at the Owusu home.

Additionally, there remains at least a genuine issue of material fact as to whether the Chicago defendants had time to secure a search warrant. As noted above, Ms. Coleman informed Officer Grzyb about Philip Owusu's failure to return the children and gave him papers relating to her guardianship of the children on Friday, November 25 at 6:30 p.m. The Chicago defendants then waited until the afternoon of the next day to go to the Owusu home. Defendants have presented no evidence suggesting that they lacked sufficient time during that interval or that it was otherwise impracticable to secure a warrant for entry into the Owusu home.

Finally, defendants had no indication that anyone in the Owusu home was armed or dangerous. Although Ms. Coleman did inform Officer Grzyb that Philip Owusu may try to take the children with him to Africa, the Chicago defendants' almost one day delay thereafter in attempting to visit the Owusu home calls into question fears that Mr. Owusu would suddenly escape with the children.

Construing the evidence in the light most favorable to the plaintiffs, no exigent circumstances justified the Chicago defendants' warrantless entry into the Owusu home.

screen door and let themselves into the home.

Plaintiffs assert that these officers failed to make an independent determination that the Chicago police officers had neither a warrant nor an exception to the warrant requirement, and thus entered the Owusu home unlawfully. The Dolton and Riverdale officer defendants correctly respond, however, that they are entitled to qualified immunity because it was not clearly established that absent circumstances indicating an unlawful entry, a police officer cannot, in responding to a call for assistance, rely upon the earlier entry into a suspect's home by a fellow police officer.

Plaintiffs cite *Smith v. Heath*, 691 F.2d 220 (6th Cir.1982) for the proposition that each officer entering a home has an independent duty to be certain he is doing so lawfully. However, the *Smith* case does not stand for that broad proposition.

The plaintiff in *Smith* committed a minor traffic offense in front of his motel. Aware of the traffic offense, a police officer went to the door of the plaintiff's motel room, which had a sign on it marked "Private Keep Out." Nonetheless, the officer kicked the door open and forced his way inside. With his gun drawn the officer walked through the kitchen of the plaintiff's motel room, opened the bedroom door and fired repeatedly at the plaintiff, gravely wounding him.

After receiving a call on his car radio about the shooting incident and possible homicide, a homicide detective in charge of this particular investigation drove to the plaintiff's motel room. When he arrived the detective found the door to plaintiff's motel room open and other officers—who had arrived on the scene shortly before the detective—already inside.

The detective ordered the plaintiff's relatives into a back room and told them to stay there, without either inquiring as to their knowledge of the events surrounding the shooting or explaining the officers' presence or actions. The detective then directed the other officers to seize evidence, without limiting their search in any way.

With no apparent justification, the plaintiff's van was impounded and taken away. Although the police ransacked the motel room, no evidence of illegal acts or activity was uncovered.

The Sixth Circuit Court of Appeals affirmed the district court's denial of the detective's claim of qualified immunity. It did so, however, in reliance on the district judge's specific finding that the detective and the officers:

> knew their actions to be improper; that they were not performing routine or normal police procedure; that they had "ulterior" motives in undertaking a warrantless, unconstitutional search and that no probable cause existed for their conduct.

*Id.*, 691 F.2d at 226. The words of the district judge best describe the gravity of the constitutional violation apparent in *Smith:*

> in an effort to find some evidence to mitigate the impact of those unconstitutional acts [ (the officer's entry into the motel room and shooting of plaintiff), the detective] and his subordinates engaged in an unconstitutional orgy of unique proportions. They were not performing routine nor normal police procedures.

*Id.*, 691 F.2d at 222.

In contrast to *Smith*, in this case there is no genuine issue of material fact that neither the Dolton nor the Riverdale officer defendants knew or should have known that their actions in entering the Owusu home were improper. The officers merely responded to calls for assistance from the Chicago officer defendants. When they arrived at the Owusu home the wooden front door of the Owusu home was open. All of the Dolton and Riverdale officer defendants either were let into the Owusu home by the Chicago officer defendants or, hearing yelling and screaming in the house, simply opened the screen door and let themselves in.

Moreover, at the time they entered the Owusu home neither the Dolton nor the Riverdale officer defendants had reason to believe that the Chicago officer defendants

had unlawfully entered the Owusu home. Additionally, there is no indication that the entries by the Riverdale and Dolton officer defendants into a suspect's home under the circumstances present here deviated in any way from routine or normal police procedure or that the Dolton or Riverdale officer defendants had ulterior motives for their conduct. Therefore, the facts of *Smith* are not apposite to this case.

The court in *Smith* imposed liability for an entry which occurred following a prior unlawful entry because the facts establish that the latter officer *knew* his entry to be unlawful and "that the officers involved knew their actions to be improper". *Smith*, 691 F.2d at 225–226. The plaintiffs have not cited and this court has not found any authority for the proposition that *absent* circumstances indicating to the entering police officers that their entry is unlawful, police officers—in responding to calls for assistance—cannot rely upon an earlier entry by a fellow police officer into a suspect's home.[6]

As the Seventh Circuit Court of Appeals has stated:

> It is not enough that the recognition of the right could be predicted from cases dealing with analogous issues, or that the right lay in the line of natural evolution from accepted principles, or that, stated with sufficient generality, the right could be said to exist already.

*K.H. v. Morgan*, 914 F.2d 846, 850 (7th Cir.1990). Instead, the right must be either "expressly established by, or be clearly implicit in, existing case law, to allow a damages suit to be maintained." *Id.*

In this case the specific right asserted—a right not to have one's home entered without a warrant by police officers who, absent circumstances indicating an unlawful entry and in response to a call for assistance, rely upon earlier entry into a suspect's home by fellow police officers—was

not expressly established by or clearly implicit in existing case law. Therefore, on Count I of the amended complaint summary judgment must be entered in favor of the Dolton and Riverdale officer defendants and against the plaintiffs on the basis of qualified immunity.

#### 2. *Unlawful Arrest*

■ Plaintiffs also allege that the officer defendants unlawfully arrested Philip, Seth and Daniel Owusu. (Amended Complaint, Count I, ¶ 11.)

In response to these allegations defendants argue that plaintiffs' guilty pleas in state court to charges of obstructing peace officers collaterally estop plaintiffs from arguing in this civil rights action that their arrests were unlawful. However, according to plaintiffs, Philip, Seth and Daniel Owusu never pleaded guilty to the state charges. (Philip Owusu Dep. at 115, 120–21.) On the contrary, plaintiffs claim that Philip Owusu demanded a trial. (*Id.* at 121.)

Plaintiffs claim that despite this trial demand, after the state judge read the obstruction charges to Philip Owusu and his two sons, the Owusus' attorney, the state's attorney and the judge went into "conference" in the judge's chambers. (*Id.* at 120.) Upon their return the judge told the Owusus that if they had no problems for three months "there won't be any charges. There won't be any record." (*Id.* at 120–21.) The court never asked Philip Owusu for his plea. (*Id.* at 122; Philip Owusu Aff. ¶ 6; *see also* Transcript of Proceedings Before Hon. Charles Leary, 12–29–88, attached to 12(m) Statement.)

Given plaintiffs' version of the facts, it is clear that there is a genuine issue of material fact as to whether the Owusus ever pleaded guilty to the obstruction charges.[7] Therefore, the state court proceedings cannot have the collateral estoppel effect which defendants claim.

---

6. Even if there are cases which support such a proposition, the fact that the parties and this court have not found those cases indicates that the right which plaintiffs assert is not "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039; *see also Smallwood v. Renfro*, 708 F.Supp. 182, 191 n. 16 (N.D.Ill.1989).

7. Even if a plea of guilty were entered by the court, given Philip Owusu's testimony and the absence of a guilty plea in the state court transcript, there would remain a genuine issue of material fact as to the reliability of that plea. *Cf. Hengels v. Gilski*, 127 Ill.App.3d 894, 83 Ill. Dec. 101, 112–114, 469 N.E.2d 708, 719–721 (1st Dist.1984).

■ There also remains a genuine issue of material fact as to whether the Owusus indeed obstructed any of the defendant officers such that their arrest was warranted. Defendants have failed to present any evidence (other than Officer Grzyb's conclusory complaint[8]) that the Owusus obstructed any of the officers. Plaintiffs, on the other hand, have presented evidence that their actions did not constitute obstruction. (*See, e.g.*, Philip Owusu Dep. at 78–79; Seth Owusu Dep. at 49–52, 71–72; Daniel Owusu Dep. at 69–73; Bonneau Dep. at 38–39.) Therefore, there remains a genuine issue of material fact as to whether the officer defendants unlawfully arrested the Owusus.

■ Likewise, there remains an issue regarding which defendants potentially could be lawful for the arrests. According to plaintiffs, Chicago Officers Grzyb and DiGrazia and Riverdale Officers Walker, Bonneau and Golden arrested the Owusus. (12(m) Statement In Response to Dolton Def., ¶¶ 48, 52, 58.) However, citing *Byrd v. Brishke*, 466 F.2d 6 (7th Cir.1972) plaintiffs argue that all officer defendants may be liable for the Owusus' unlawful arrest.

In *Byrd* several police officers allegedly beat the plaintiff while other officers—both supervisory and nonsupervisory—looked on. In reversing the District Court's directed verdict in favor of the nonsupervisory officer defendants, the Seventh Circuit Court of Appeals stated:

> We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. That responsibility obviously obtains when the nonfeasor is a supervisory officer to whose direction misfeasor officers are committed. So, too, the same responsibility must exist as to nonsupervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace.

*Id.*, 466 F.2d at 11; *see also Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir.1982) ("[I]t is not necessary, in order to hold a police officer liable under § 1983, to demonstrate that the officer actively participated in striking a plaintiff.").

As noted above, in this case there remains a genuine issue of material fact as to whether Philip, Seth and Daniel Owusu committed acts amounting to obstruction of a police officer. If, as plaintiffs claim, the Owusus did nothing constituting obstruction, then it may have been evident to the officer defendants that the Owusus' arrests—which in some instances allegedly included being shoved down and being handcuffed—were unlawful.[9] The officer defendants' claims of qualified immunity on plaintiffs' allegations of unlawful arrest must be denied.

### 3. *Municipal Liability*

■ In order to prevail on their 1983 claims against the City of Chicago, the

---

8. Officer Grzyb's complaint states merely that Philip Owusu committed the offense of obstructing a police officer by "knowingly obstructing the performance by Youth Officer Daniel GRZYB, known by him to be a peace officer, of an authorized act, taking into custody 2 minor children, within the official capacity of said peace officer, to wit, refusing to allow the officer to take custody of the 2 minor children." (Riverdale 12(1) Statement, Exhibit N.) The complaints against Seth and Daniel Owusu are virtually identical—and equally conclusory. (*Id.*, Exhibits O and P.)

9. The Dolton defendants' appeal to *Hamrick v. Lewis*, 539 F.Supp. 1166, 1170 (N.D.Ill.1982) is unavailing. In granting summary judgment for

two police officer defendants in *Hamrick*, the court relied upon an absence of evidence in the record that the defendants "were even aware of the circumstances surrounding the [other officers'] decision to arrest [plaintiff's decedent]." *Id.*

In contrast, in this case it is undisputed that the Dolton officer defendants were inside the Owusu home and watched as other officers arrested Philip, Seth and Daniel. Thus, in this case there remains a genuine issue of material fact regarding whether the officers' knowledge of the events taking place inside the Owusu household could result in imposition of liability under *Byrd*.

Village of Dolton and the Village of Riverdale, plaintiffs must establish that their alleged constitutional deprivations were caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipalities'] officers." *Sims v. Mulcahy*, 902 F.2d 524, 538 (7th Cir.1990), *quoting Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978).

Neither in their amended complaint nor in their evidence presented in response to defendants' motions to dismiss have plaintiffs offered any indication that the officers' entries into the Owusu home and the arrests of Philip, Seth and Daniel Owusu were caused by a policy statement, ordinance, regulation, or decision officially adopted and promulgated by officers of the municipal defendants. Therefore, the municipal defendants' motion for summary judgment on Count I must be granted.

### B. *Pendent State Law Claims*

Defendants also have moved for summary judgment on plaintiffs' five pendent state law claims. The court shall address each of these claims.

#### 1. *Count II: False Arrest and False Imprisonment*

Plaintiffs' first pendent state claim alleges that defendants falsely arrested and imprisoned Philip, Seth and Daniel Owusu. For the reasons stated above, however, defendants' contention that plaintiffs' state court "guilty pleas" collaterally estop them from re-litigating their arrests must be rejected. Because there remains a genuine issue of material fact regarding whether defendants falsely arrested and imprisoned Philip, Seth and Daniel Owusu, all defendants' motion for summary judgment on Count II must be denied.[10]

#### 2. *Count III: Assault and Battery*

■ The officer defendants base their motion for summary judgment as to plain-

tiffs' assault and battery claim upon the Illinois Tort Immunity Act, Ill.Ann.Stat. ch. 85, ¶ 2–202 (Smith–Hurd 1987) ("Section 2–202"). Under Section 2–202:

> A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct.

*Id.* In order for a public employee's acts or omissions to be characterized as "willful or wanton" they must have been committed "with actual or deliberate intention to harm or with an utter indifference to or conscious disregard for the safety of others." *Breck v. Cortez*, 141 Ill.App.3d 351, 95 Ill.Dec. 615, 621, 490 N.E.2d 88, 94 (2d Dist.1986); Ill.Ann.Stat. ch. 85, ¶ 1–210 (Smith–Hurd 1987).

According to plaintiffs, the officer defendants arrested Philip, Seth and Daniel Owusu without provocation or other proper basis. Philip Owusu was handcuffed. Seth Owusu was shoved, wrestled to the floor and handcuffed. Daniel Owusu was grabbed, thrown to the ground and handcuffed. Based upon this conduct a jury could find that the officer defendants' acts in assaulting and battering plaintiffs were committed "with actual or deliberate intention to harm or with an utter indifference to or conscious disregard for the safety of others." *Id.; Stamat v. Merry*, 78 Ill. App.3d 445, 33 Ill.Dec. 808, 812, 397 N.E.2d 141, 145 (1st Dist.1979) ("The question of whether certain acts amount to wilful and wanton misconduct is normally a question of fact to be determined by the jury."). Thus, all defendants' motions for summary judgment on Count III of plaintiffs' amended complaint must be denied.[11]

#### 3. *Counts IV and V: Trespass*

■ The Dolton and Riverdale officer defendants correctly argue, however, that Section 2–209 of the Illinois Tort Immunity Act insulates them from liability for trespass. Section 2–209 states:

---

**10.** The municipal defendants based their motions for summary judgment on the pendent state claim upon Ill.Ann.Stat. ch. 85, ¶ 2–109 (Smith–Hurd 1987), which states that a local public entity "is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." Obviously,

because the officers' motions for summary judgment on Count II must be denied, the municipalities' motions on the same count likewise must be denied.

**11.** *See* footnote 10, *supra*.

A public employee is not liable for an injury arising out of his entry upon any property where such entry is expressly or impliedly authorized by law.

Ill.Ann.Stat. ch. 85, ¶ 2–209 (Smith–Hurd 1987). As noted in Section II(A)(1)(b) of this opinion, there is no genuine issue of material fact that the Dolton and Riverdale officer defendants entered the Owusu home in response to a call for assistance from other officers and in reliance upon the earlier entries of the other officers, who were still in the home. Where as here there is no genuine dispute that the follow-up officers had no reason to believe the earlier entries were unlawful, the follow-up officers' entries are "impliedly authorized by law" within the meaning of Section 2–209.

Accordingly, summary judgment must be entered in favor of the Dolton and Riverdale officer defendants on Counts IV and V of plaintiffs' amended complaint.[12] The Chicago officer defendants' motion for summary judgment on Counts IV and V must be denied for the reasons stated in Section II(A)(1)(a), *supra*.[13]

### 4. *Count VI: Invasion of Privacy*

██ Finally, summary judgment must be granted in favor of all defendants on Count VI of plaintiffs' amended complaint. In Count VI plaintiffs allege that defendants violated a state-created privacy right to be free from "unreasonable intrusions upon the[ir] solitude and seclusion." (Amended Complaint, Count VI, ¶ 16.)

However, such a right is far from "clearly established." On the contrary, the Illinois Supreme Court has acknowledged a marked disagreement among Illinois appellate courts as to whether any such right exists at all—a conflict which, by the way, the Supreme Court has yet to resolve.

*Lovgren v. Citizens First Nat. Bank*, 126 Ill.2d 411, 128 Ill.Dec. 542, 543, 534 N.E.2d 987, 988 (1989).

Because the officer defendants violated no clearly established state-created privacy right to be free from unreasonable intrusions upon their seclusion, defendants' motions for summary judgment on Count VI of plaintiffs' amended complaint must be granted on the basis of qualified immunity.[14] *Cf. Fulk v. Roberts*, 164 Ill.App.3d 194, 115 Ill.Dec. 412, 413–414, 517 N.E.2d 1098, 1099–1100 (5th Dist.1987).

### III. CONCLUSION

For the reasons stated in this memorandum opinion and order:

(1) the Chicago officer defendants' motion for summary judgment on the unlawful entry allegations of Count I of plaintiffs' amended complaint is DENIED;

(2) the Dolton and Riverdale officer defendants' motions for summary judgment on the unlawful entry allegations of Count I are GRANTED; thus, on the basis of qualified immunity summary judgment is entered in favor of the Dolton and Riverdale officer defendants and against plaintiffs on the unlawful entry allegations of Count I;

(3) the motions for summary judgment by all officer defendants on the unlawful arrest allegations of Count I are DENIED;

(4) the City of Chicago, Village of Dolton and Village of Riverdale's motion for summary judgment on Count I is GRANTED; thus, summary judgment is granted in favor of the City of Chicago, Village of Dolton and Village of Riverdale and against plaintiffs on Count I;

(5) all defendants' motions for summary judgment on Count II are DENIED;

---

**12.** This includes entry of summary judgment in favor of the Village of Dolton and the Village of Riverdale based upon Ill.Ann.Stat. ch. 85, ¶ 2–109 (Smith–Hurd 1987).

**13.** This includes denial of summary judgment as to the City of Chicago. *See* Ill.Ann.Stat. ch. 85, ¶ 2–109 (Smith–Hurd 1987).

**14.** Alternatively, summary judgment must be granted in defendants' favor on Count VI be-

cause plaintiffs have raised no genuine issue of material fact that defendants entered the Owusu home "with actual or deliberate intention to harm or with utter disregard for the safety of others." Ill.Ann.Stat. ch. 85, ¶ 1–210 (Smith Hurd 1987). Hence, under Ill.Ann.Stat. ch. 85, ¶ 2–202 (Smith Hurd 1987) defendants have engaged in no "willful or wanton" conduct.

(6) all defendants' motions for summary judgment on Count III are DENIED;

(7) the Chicago defendants' motion for summary judgment on Counts IV and V is DENIED;

(8) the Dolton and Riverdale defendants' motions for summary judgment on Counts IV and V are GRANTED; thus, summary judgment is entered in favor of the Dolton and Riverdale defendants and against plaintiffs on Counts IV and V of plaintiffs' amended complaint;

(9) all defendants' motions for summary judgment on Count VI are GRANTED; thus, on the basis of qualified immunity summary judgment is entered in favor of all defendants and against plaintiffs on Count VI of the amended complaint.

This case is set for status on November 14, 1990 at 10:00 a.m. The court shall set a trial date at that time. The parties are urged to discuss settlement of this case before the status date.